# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL LOWES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-688 |
| | ) | |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| THE SUMMIT SCHOOL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Pending before the Court is a Motion to Dismiss filed by Defendant The Summit School, Inc. (**Doc. 15**), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's Motion will be GRANTED and Counts I, III, and V of Plaintiff's Complaint will be DISMISSED WITHOUT PREJUDICE.

### A. BACKGROUND[1]

Plaintiff Michael Lowes has suffered from chronic lower back pain for the past fourteen years. Doc. 1 ¶ 4. On June 5, 2013, Defendant hired Plaintiff as a night counselor. Id. ¶ 5. In the summer of 2015, Plaintiff further injured his back while lifting an object at work and he underwent surgery in August 2015. Id. ¶ 7. Following his surgery, Plaintiff took FMLA leave from August 5, 2015 until September 9, 2015. Id. ¶ 11. Plaintiff states that, following his

---

[1] The following background facts are taken from Plaintiff's Complaint (Doc. 1). Because the case is presently before this Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pleaded factual averments and reasonable inferences in the light most favorable to the non-moving party. Id.

1

surgery, he experiences great difficulty walking, standing, sitting, lifting, sleeping and a number of other activities as a result of the pain. Id. ¶ 8.

On September 9, 2015, Plaintiff returned to work with several light duty restrictions. Id. ¶ 14. Defendant accommodated Plaintiff's light duty restrictions by assigning him to van patrol. Id. ¶ 16. Plaintiff alleges that, from September 9, 2015 through November 3, 2015, he was "subjected to a number of comments, which he considered to be harassment," and that "the comments were made primarily by" three individuals – Gabe Varrenti, Matthew Beasly and Russ Swanson. Id. ¶¶ 18-19. Plaintiff alleges that these individuals "question[ed] the necessity of [his] light duty restrictions, demand[ed] that the restrictions be lifted, and [made] veiled threats against [his] continued employment without a foreseeable end-date of his light duty restrictions." Id. ¶ 20. The Complaint provides no details regarding Plaintiff's relationship with these three individuals, *e.g.*, whether they were Plaintiff's co-workers or his supervisors.

On November 3, 2015, Defendant removed Plaintiff from light duty and placed him on fire patrol, which required him to climb 40 steps a total of 21 times between 11:30 p.m. and 4:00 a.m. Id. ¶¶ 23-24. Defendant attempted to complete the fire patrol shift but, at 3:00 a.m., left a message for his supervisor, Ron Hreha, telling him that he could not tolerate the pain and he went home. Id. ¶ 25. Hreha did not respond to Plaintiff's message. Id. ¶ 26. Thereafter, Plaintiff went out on leave from November 5 to November 17, 2015, during which time he collected worker's compensation benefits. Id. ¶¶ 27, 30, 34. On November 5, 2017, Plaintiff sent an email to John McCloud, an alleged "agent" of Defendant, "complaining about the treatment of Hreha and his co-workers." Id. ¶ 28. McCloud did not respond to Plaintiff's e-mail. Id. ¶ 29. On November 6, 2015, Hreha called Plaintiff and asked, 'Are we cool?'" Id. ¶ 32. Hreha then stated that he did not receive Plaintiff's messages and that if Plaintiff had alerted him

that he could not complete his fire patrol duties, he would have assigned him to van patrol. Id. ¶ 33.

On November 17, 2015, Plaintiff was released to return to work with light duty restrictions. Id. ¶ 34. Upon his return, he was reassigned to van patrol. Id. ¶ 35. According to Plaintiff, however, Defendant provided him with a "sub-standard van, which had broken power steering, broken reclining bucket seats and broken driver's armrests." Id. ¶ 36. Plaintiff asked to use a different van but was told that no other vans were available. Id. ¶ 39. At that time, Plaintiff observed, and took a picture of, another van that was not in use and functioned properly. Id. ¶ 39.

On November 20, 2015, Plaintiff hand-delivered a letter from his legal counsel to Defendant requesting that Defendant stop discriminating against him. Id. ¶ 41. On November 23, 2015, Defendant again assigned Plaintiff a sub-standard van. Id. ¶ 42. In response to the assignment, Plaintiff sent another e-mail to Defendant, stating that he felt like Defendant was discriminating against him "because he was continually assigned to a sub-standard van while other vans were available." Id. ¶ 43. Defendant did not respond to Plaintiff's e-mail. Id. ¶ 44. Plaintiff resigned his position the next day, November 24, 2015. Id. ¶ 45.

After exhausting his claims before the EEOC, Plaintiff filed this action on May 26, 2017. Doc. 1. On September 25, the Court granted a partial motion to dismiss filed by Plaintiff pursuant to Fed.R.Civ.P. 41. Doc. 13. Defendant now moves to dismiss the remaining three counts in the Complaint, which assert claims against Defendant pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. (Count I; Count III; Count V). Doc. 15.

B.  ANALYSIS

1.  <u>Whether Plaintiff is a "Qualified Individual With A Disability" Under the ADA</u>

Defendant first argues that Plaintiff's ADA claims fail because he is not "a qualified individual with a disability" under 42 U.S.C. § 12112(a). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). In passing the ADAAA, Congress expanded the definition of "disability," which courts had interpreted narrowly under the ADA, and stressed that the ADA should be "construed in favor of broad coverage of individuals." ADA Amendments Act of 2008, Pub.L. No. 110–325, § 4(a), 122 Stat. 3553, 3555; <u>see also id</u>. at *7 ("[T]he determination of whether an impairment substantially limits a major life activity . . . should require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA.") (quotations and citation omitted).

Defendant cites case law holding that temporary post-surgery physical limitations do not constitute a "disability" under the ADA. <u>See</u> Doc. 16 at pp. 5-6. However, the cases Defendant cites pre-date the passage of the ADAAA. Furthermore, Plaintiff does not claim that he is disabled because of a temporary injury following surgery; rather, Plaintiff alleges that he suffers from "chronic lower back pain," and that the 2015 workplace injury and surgery only resulted in "further" injury. Doc. 1 ¶¶ 4, 7. Defendant also argues that Plaintiff has not demonstrated that his impairment "substantially limits" a major life activity. Doc. 24 at p. 3. However, Plaintiff clearly alleges that he "experiences great difficulty walking, standing, sitting, lifting, sleeping and a number of other activities as a result of pain." Doc. 1 ¶ 8. Particularly in light of the ADAAA's "command to construe 'disability' broadly," <u>Estate of Murray v. UHS of Fairmont,</u>

Inc., 2011 WL 5449364, at *6 (E.D. Pa. Nov. 10, 2011), the Court finds that that such allegations are sufficient to demonstrate that Plaintiff is "disabled" under the meaning of the statute.

Defendant also argues that Plaintiff is "judicially estopped" from claiming that he can perform the essential functions of his position because he received worker's compensation benefits from November 4 through November 17, 2015. Doc. 16 ¶¶ 8-9 (citing Motley v. New Jersey State Police, 196 F.3d 160, 165-166 (3rd Cir. 1999) for the proposition that "[a] person who is totally disabled and thus unable to perform in a job, even with an accommodation, is not a 'qualified individual' under the Act."). However, the fact that Plaintiff received worker's compensation benefits for a short period of time is in no way an admission that he is "totally disabled" as a matter of law. To the contrary, Plaintiff was cleared to return to work with light duty restrictions on November 17, 2015, suggesting that, if anything, he was temporarily rather than "totally" disabled.

2. Count I: ADA Failure to Accommodate

Having found that the Complaint sufficiently alleges that Plaintiff is a "qualified individual with a disability," the Court now turns to whether it states any viable claims against Defendant under the ADA. First, the Court will consider Plaintiff's claim at Count I that Defendant failed to accommodate his disability. To prove a failure-to-accommodate claim, Plaintiff must show that: (1) Defendant knew about his disability; (2) Plaintiff requested accommodations or assistance for his disability; (3) Defendant did not make a good faith effort to assist him in seeking accommodations; and (4) Plaintiff could have been reasonably accommodated but for the employer's lack of good faith. Evans v. Cernics, Inc., 2016 WL 4382751, at *10 (W.D. Pa. Aug. 16, 2016) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-20 (3d Cir. 1999)).

5

In his Complaint, Plaintiff acknowledges that, when he returned to work following his back surgery, Defendant accommodated his request for "light duty" by assigning him to "van patrol" from September 9 to November 3, 2015. Plaintiff claims, however, that he "suffered discrimination when The Summit School failed to reasonably accommodate [his] disability when he was assigned to fire patrol, which required Lowes to violate his light duty restrictions." Doc. 1 ¶ 50. In other words, Plaintiff's reasonable accommodation claim is based solely on Defendant's decision to assign him to "fire patrol" on a single day – November 3, 2015 – almost two months after he returned to work following his surgery. The Court finds that this decision, by itself, does not give rise to a failure-to-accommodate claim.

Notably, Plaintiff does not allege that he asked Defendant to remain on light duty—or that his physician instructed him to remain on light duty—for a certain length of time following his surgery. Thus, there is no reason to believe that Defendant acted unreasonably in removing the light duty restriction two months after Plaintiff returned to work. Moreover, "it is well-established that '[t]he ADA does not require an employer to create a new position . . . [or] transform a temporary light duty position into a permanent position.'" Oji v. Devereux Found., 2017 WL 282830, at *6 (E.D. Pa. Jan. 23, 2017), appeal dismissed, 2017 WL 3752997 (3d Cir. May 18, 2017) (citation omitted). Accordingly, the Court finds that Defendant's decision to assign Plaintiff to "fire patrol" nearly two months after he returned to work did not violate the ADA's reasonable accommodation requirement.

Furthermore, the Court notes that, as soon as Plaintiff informed Defendant that he could not perform his duties on "fire patrol," Defendant allowed him to return to van patrol. See Doc 1 ¶ 34 ("On November 17, 2015, Lowes was released back to work with the same light duty restrictions."); id. at ¶ 35 ("When Lowes returned to work, he was reassigned to van patrol.");

see also id. ¶¶ 32, 33 ("On November 6, 2015, Hreha called Lowes and asked, 'Are we cool?' During the call, [Plaintiff's supervisor Ron] Hreha claimed he did not receive Lowes's messages and claimed that if Lowes had alerted him, Lowes would have been allowed back on van patrol."). Thus, if anything, the allegations demonstrate that Defendant took affirmative steps to reasonably accommodate Plaintiff's disability not once, but twice.

For these reasons, Plaintiff's failure-to-accommodate claim will be dismissed without prejudice.

### 3. Count III: ADA Retaliation

Plaintiff next claims that Defendant unlawfully retaliated against him for complaining about perceived disability discrimination. To state an ADA retaliation claim, Plaintiff must establish that: (1) he engaged in a protected activity, (2) he experienced an adverse employment action following the protected activity, and (3) there is a causal link between the protected activity and the adverse employment action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).

Here, Plaintiff's retaliation claim fails as a matter of law because he does not allege that he suffered any "adverse employment action" as a result of his alleged protected activity. Plaintiff's primary grievance appears to be that he was assigned a "sub-standard van" after complaining to Defendant on November 5 and 20, 2015 about perceived discrimination. Doc. 1 ¶¶ 36-40. However, such a trivial change in the conditions of one's employment does not constitute an "adverse employment action." See Burlington Industries v. Ellereth, 524 U.S. 742, 118 S.Ct. 2257, 2268 (1998) (defining adverse employment actions as conduct which "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits."); Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 787 (3d Cir. 1998) ("[M]inor or trivial actions that merely make an employee 'unhappy' are not sufficient to qualify as retaliation under the ADA, for otherwise every action that an 'irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'") (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (citation omitted)). Accordingly, Plaintiff's retaliation claim will be dismissed without prejudice.

4. Count V: Hostile Work Environment

Finally, Plaintiff brings a "hostile work environment" claim against Defendant, asserting that his "supervisors and co-workers intentionally discriminated against him, pervasively and severely by constantly harassed him about his light duty restrictions' scope and duration." Doc. 1 ¶ 83. To state a cause of action for hostile work environment under the ADA, Plaintiff must allege that he was subjected to harassment based on his disability or request for an accommodation and that such harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999).

Plaintiff alleges that three individuals made "harassing" comments to him between September and November 2015. However, Plaintiff does not specify whether these individuals were his co-workers or supervisors. [2] If the alleged harassers were co-workers, vicarious

---

[2] The only individual identified as a "supervisor" in the Complaint is Ron Hreha. Although Plaintiff alleges that he "complained" to McCloud about Hreha on November 5, 2017, he does not allege that Hreha ever made comments to him about his disability or request for accommodation. However, even if Hreha had spoken to Plaintiff about his accommodation, such communication would not necessarily have been unlawful. See 42 U.S.C.A. § 12112(d)(3)(B)(i)("supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations").

liability attaches "only if the employer failed to provide a reasonable avenue for complaint, or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." Miller v. Thomas Jefferson Univ. Hosp., 908 F. Supp. 2d 639, 654 (E.D. Pa. 2012), aff'd, 565 F. App'x 88 (3d Cir. 2014) (quoting Huston v. Procter & Gamble Paper Prods., 568 F.3d 100, 104 (3d Cir. 2009)). Plaintiff does not allege that there was no "reasonable avenue" for him to complain to Defendant about the alleged harassment. Furthermore, although Plaintiff alleges that he complained about his co-workers to Defendant's "agent," John McCloud, on November 5, 2015, there are no facts showing that Defendant thereafter "failed to take prompt and appropriate remedial action" to address any reported harassment. Id. ¶ 28.[3] In short, because the Complaint provides no details regarding who made the allegedly harassing comments, whether and when Plaintiff reported such comments to Defendant, and what remedial actions Defendant took or could have taken, the Court cannot determine whether Plaintiff has sufficiently established a basis for imposing vicarious liability.

Furthermore, the Court notes that Plaintiff provides few details regarding the pervasiveness of any alleged harassment, stating only that there were a "number of comments," and that the harassment "increased in both frequency and intensity" between September and November 2015. Id. at ¶ 20. Plaintiff also makes only general allegations regarding the substance of the alleged harassment, stating "[t]he general nature of the comments was questioning the necessity of Lowes's light duty restrictions, demands that the restrictions be lifted, and veiled threats against Lowes's continued employment without a foreseeable end-date

---

[3] Indeed, the Court notes that, after Plaintiff reported the alleged "discrimination" to Defendant on November 5, 2017, he worked for Defendant for only one week (from November 17 to November 24). Accordingly, Defendant scarcely had any time to investigate the complaint and take any necessary remedial action before Plaintiff resigned.

of his light duty restrictions." Id. at ¶ 20. Based on these general allegations, the Court cannot determine whether the alleged behavior here is actionable.

For these reasons, the Court finds that Plaintiff has not set forth sufficient facts to state a hostile work environment claim against Defendant under the ADA. Accordingly, the Court will dismiss this claim without prejudice to Plaintiff filing an Amended Complaint setting forth additional allegations regarding, among other things, who made the allegedly harassing comments, when such comments were made, what in fact was said, and what efforts Plaintiff made to report the alleged harassment to Defendant.

5. Leave to Amend

As it is unclear whether leave to amend would be futile, dismissal of Counts I, III, and V will be without prejudice. However, given that Plaintiff, in essence, once amended the Complaint by filing a partial motion to dismiss, he must be prepared to make a last, best effort to state viable ADA claims against Defendant in an Amended Complaint, as the Court will not afford further opportunity for amendment. See Taylor v. Pilewski, 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014) (affirming the Court's dismissal of a plaintiff's second amended complaint with prejudice, where the Court found that "[i]t [] would be inequitable to require Defendant, who already once has exhaustively and successfully defended Plaintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments").

## II.     ORDER

For the reasons stated above, Defendant's Motion to Dismiss (**Doc. 15**) is GRANTED. Consistent with the foregoing, the Court hereby DISMISSES WITHOUT PREJUDICE Counts I, III and V of the Complaint.

If Plaintiff wishes to file an Amended Complaint, he must do so on or before December 21, 2017.  Defendant must answer or otherwise plead fourteen (14) days thereafter.


IT IS SO ORDERED.



December 7, 2017                                        s/Cathy Bissoon
                                                        Cathy Bissoon
                                                        United States District Judge



cc (via ECF email notification):

All counsel of record